**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| RICHARD MUNCH, Individually and on Behalf of All Others Similarly Situated, | No. |
| Plaintiff, | **DEMAND FOR JURY TRIAL** |
| v. | |
| SPROUT SOCIAL, INC., JUSTYN HOWARD, RYAN BARRETTO, and JOE DEL PRETO, | |
| Defendants. | |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

Plaintiff Richard Munch, ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Sprout Social, Inc. ("Sprout Social" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Sprout Social; and (c) review of other publicly available information concerning Sprout Social.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that purchased or otherwise acquired Sprout Social securities between November 2, 2023 and May 2, 2024 inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2. Sprout Social is a software company which develops and operates a web-based social media management platform. The Company's software offers a centralized platform for customers to manage social media outreach, including integrated tools for social engagement, publishing, reporting, and analytics. The Company generates revenue primarily from subscriptions to this social media management platform under a software-as-a-service model. The Company serves multiple customer cohorts, including public relations, influencer marketing, customer service, small-and-medium-sized businesses, as well as mid-market companies, and enterprise customers.

3. On August 3, 2023, the Company announced it had acquired Tagger Media, Inc. ("Tagger"), a leading influencer marketing and social intelligence platform used by enterprise

1

brands and agencies. On September 27, 2023, the Company announced during its Investor Day that it would be "[a]ccelerating our outbound marketing & sales motion in enterprise" and focusing on mid-market and enterprise leadership.

4.      On May 2, 2024, after the markets closed, Sprout Social announced the Company's operating results for the first fiscal quarter of 2024, disclosing that the Company had missed its revenue guidance for the quarter. The company also revised its full year 2024 revenue guidance downward $20 million. The Company's Chief Financial Officer ("CFO") Joe Del Preto ("Del Preto") stated the Company had "***underestimated the magnitude of enterprise seasonality***" and that the Company had also been "***self-inducing sales execution headwinds***." During the earnings call held on the same day, the Company's Present and incoming Chief Executive Officer ("CEO"), Ryan Barretto ("Barretto") disclosed that the Company "made several important strategic decisions heading into Q1" which the Company "***thought [it] could manage [] without disruption, but they collectively set us back***." Barretto stated these decisions "happened in Q4 and the execution of it happened in Q1." Barretto further disclosed the Company's shift in business had "changed materially" and "affect[ed] revenue recognition and planning" which would now be "heavily weighted to traditional enterprise buying cycles." Justyn Howard ("Howard"), the Company's current CEO, also disclosed that the Company had to spend "energy and calorie" in the first quarter on "tactical decisions" including "***spending time with the team on Tagger enablement***." Barretto explained further, stating "[f]rom a sales team perspective, the maturity of the sales team, ***we did a lot of enablement in Q1 across our entire customer-facing or to make sure that we are up to speed with all of the elements of influencer and our Tagger platform***."

5.      On this news, Sprout Social's stock price fell $19.33, or 40.1%, to close at $28.82 per share on May 3, 2024, on unusually heavy trading volume.

6.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) the Company's sales and revenue growth were not indicative of the Company's growth as it transitioned to an enterprise sales cycle; (2) that the Company faced integration challenges with its acquisition of Tagger; (3) as a result, the Company was "self inducing sales headwinds;" (4) as a result, the Company would revise fiscal year 2024 revenue guidance; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

7.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

8.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District. Additionally, the Company is headquartered in this District.

11.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

12.     Plaintiff Richard Munch, as set forth in the accompanying certification, incorporated by reference herein, purchased Sprout Social securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Sprout Social is incorporated under the laws of Delaware with its principal executive offices located in Chicago, Illinois. Sprout Social's common stock trade on the NASDAQ exchange under the symbol "SPT."

14.     Defendant Howard is the Company's co-founder and current CEO.

15.     Defendant Barretto has served as the Company's President since December 2020. The Company has announced Barretto will become Sprout Social's CEO effective October 1, 2024.

16.     Defendant Del Preto was the Company's CFO at all relevant times.

17.     Defendants Howard, Barretto, and Del Preto (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and

access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

18.     Sprout Social is a software company which develops and operates a web-based social media management platform. The Company's software offers a centralized platform for customers to manage social media outreach, including integrated tools for social engagement, publishing, reporting, and analytics. The Company generates revenue primarily from subscriptions to this social media management platform under a software-as-a-service model. The Company serves multiple customer cohorts, including public relations, influencer marketing, customer service, small-and-medium-sized businesses, as well as mid-market companies, and enterprise customers.

19.     On August 3, 2023, the Company announced it had acquired Tagger, a leading influencer marketing and social intelligence platform used by enterprise brands and agencies. On September 27, 2023, the Company announced during its Investor Day that it would be "[a]ccelerating our outbound marketing & sales motion in enterprise" and focusing on mid-market and enterprise leadership.

**Materially False and Misleading**

**Statements Issued During the Class Period**

20.     The Class Period begins on November 2, 2023. On that day, Sprout Social announced financial and operating results for its third quarter ended September 30, 2023 in a press release; the press release quoted Defendant Del Preto who stated in relevant part:[1]

> "Our focused investments are delivering strong returns," said Joe Del Preto, CFO. "***Our current performance and leading indicators performed well during Q3 led by the rapidly changing mix of our business and further acceleration in our enterprise segment. Tagger overperformed our expectations right out of the gate***."

21.     On November 3, 2023, the Company held an earnings call pursuant to the third quarter 2023 financial results, (the "3Q23 Earnings Call"). During the 3Q23 Earnings Call, Defendant Howard touted the Company's integration of Tagger, stating "***Business integration has also progressed smoothly*** and early customer reception to tagger has far exceeded our expectations." Defendant Barretto also touted the Company's integration of Tagger with the Company's sales teams during the 3Q23 Earnings Call, stating in relevant part:

> ***We've got the team now working really well across the go-to-market organization embedded into our marketing, our sales, and customer success motions***. And then certainly on the product side, our R&D organizations have been working really closely together, not only on the integration, but as we think about 2024 and some of the opportunities in front of us.

22.     During the 3Q23 Earnings Call, an analyst for Canaccord Genuity posed a question, asking "what kind of trends you're seeing in sales cycles as you move really up into that kind of large enterprise bucket." Barretto replied and asserted that "***we generally have a faster sales cycle than you might see with other enterprise software players, both in our space and outside of it***" and "we've seen really good cycles."

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

23.     On November 3, 2023, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2023 which purported to warn of unrealized risks, including that the Company "may be unable to integrate acquired businesses or technologies successfully or achieve the expected benefits of such acquisitions and investments," stating in relevant part:

> Any investment, business relationship or acquisition, including our acquisitions of Simply Measured, Inc. in December 2017, Repustate in January 2023 and ***Tagger Media in July 2023 may result in unforeseen operating difficulties and expenditures or business liabilities. In particular, we may encounter difficulties integrating the businesses, technologies, products, personnel or operations of the acquired companies***, particularly if key personnel of the acquired company choose not to work for us, the acquired platform, products or services are not easily adapted to work with our platform or products or we have difficulty retaining the customers of any acquired business due to changes in ownership, management or otherwise. Acquisitions may also disrupt our business, divert our resources and require significant management and research and development attention that would otherwise be available for development of our existing platform and products. Moreover, the anticipated benefits of any acquisition, investment or business relationship may not be realized, we may be exposed to unknown risks or liabilities or our ability to complete these transactions may often be subject to approvals that are beyond our control. Consequently, these transactions, even if announced, may not be completed.

24.     On February 20, 2024, the Company announced financial and operating results for its fourth quarter and full year ended December 31, 2023 (the "FY23 Press Release"). The FY23 Press Release quoted Defendant Howard, as follows, in relevant part:

> "We're pleased to share incredibly strong fourth quarter results," said Justyn Howard, Sprout Social's CEO and co-founder. "We're building an enduring software company centered on amazing products, amazing people and overdelivering for our customers every day. ***We delivered step change growth in current & total contract value bookings and were recently named the #1 best software product by G2, which we believe position Sprout to build on our momentum in 2024.***"

25.     The FY23 Press Release advised of expected first quarter and full year 2024 financial results, stating in relevant part:

**First Quarter and 2024 Financial Outlook**

For the first quarter of 2024, the Company currently expects:

- ***Total revenue between $97.2 million and $97.3 million, or growth of greater than 29%.***

- Non-GAAP operating income to be between $0.6 million and $0.7 million.

- Non-GAAP net income per share of between $0.00 and $0.01 based on approximately 56.4 million weighted-average shares of common stock outstanding.

*"Our execution and leading indicators in Q4 were strong,"* said Joe Del Preto, CFO. *"We've largely moved away from our low end growth anchor. We believe the step change in quality of our Q4 outperformance and notable momentum with leading social-first brands position Sprout to continue to execute well on our journey towards $1B in annual revenue."*

**For the full year 2024, the Company currently expects:**

- Total revenue to be between $425.3 million and $425.5 million.

- Non-GAAP operating income between $15.0 million and $16.0 million.

26.     On February 20, 2024, the Company held an earnings call pursuant to the fourth quarter and full year 2023 financial results (the "FY23 Earnings Call"). During the FY23 Earnings Call, Del Preto indicated the Company was "***through the final stages***" of integration of Tagger and that the Company's sales cycles would be weighted ***towards*** the first quarter over time, with "durable" enterprise growth, stating in relevant part:

Deferred revenue at the end of the quarter was $141.5 million, a record sequential increase. Looking at both our billed and unbilled contracts, RPO totaled $275.0 million, up from $228.7 million exiting Q3, and up 69% year-over-year. We expect to recognize 72% or $198 million of total RPO as revenue over the next 12 months and playing a CRPO growth rate of 62% year-over-year. ***The acceleration of these metrics reflects our underlying momentum in the enterprise, highlights rapidly improving quality of our business, and revenues are highest ever quarterly total contract value bookings by nearly 80%.***

*             *             *

***While working through the final stages of Tagger integration, accounts receivable also increased by nearly double the amount of Q4 2022, reflecting an expanding enterprise renewal base, which we believe will make our cash flow more seasonally weighted towards Q1 over time***.

*             *             *

8

Over the course of 2023, *we have aligned our business and our investments around the most productive and fastest growing segments of our market. We believe we transformed our business model to position us to deliver increasingly durable and increasingly efficient growth.*

27. Throughout the FY23 Earnings Call, Howard similarly discussed the Company's enterprise segment growth and the effective intergration of Tagger:

*But what we're seeing, and we talked about some of the deals that we did in Q4. We talked about how the size and duration of contracts continues to climb. The seat counts continue to climb.*

\*　　　\*　　　\*

*We see this as a growing opportunity and one that is probably as healthy as it's ever been both in terms of pipeline and our outlook, right? And, I think that the confidence that we have in where we're guiding the revenue for the year is indicative of that.* I think that we see Tagger's upside. We see continued acceleration with the Care use cases is upside and a bunch of other things. So that does not reflect our experience or outlook on the market.

28. Throughout the FY23 Earnings Call, Defendants asserted that integrating and training for customer-facing employees on Tagger was effectively complete; Defendant Del Preto stated "*as of now, the entire sales team is now trained up on Tagger. And so it's now in the bag.*" Defendant Barretto similarly stated customer facing teams were "*fully up to speed*," as quoted in relevant part:

From a go-to-market perspective, I mean part of it for us as we've been integrating the teams and getting up to speed is being really cross-training all of the folks on our team from an AE and a solution engineering and a customer success perspective so that *we're fully up to speed with all the things in influencer marketing*.

29. On February 23, 2024, the Company filed its annual report on Form 10-K for the fiscal year ended December 31, 2023 which purported to warn of unrealized risks, including that the Company "may be unable to integrate acquired businesses or technologies successfully or achieve the expected benefits of such acquisitions and investments", stating in relevant part:

Any investment, business relationship or acquisition, including our acquisitions of Repustate in January 2023 and *Tagger Media in August 2023, may result in*

*unforeseen operating difficulties and expenditures or business liabilities. In particular, we may encounter difficulties integrating the businesses, technologies,* products, personnel or operations of the acquired companies, particularly if key personnel of the acquired company choose not to work for us, the acquired platform, products or services are not easily adapted to work with our platform or products or we have difficulty retaining the customers of any acquired business due to changes in ownership, management or otherwise. *Acquisitions may also disrupt our business, divert our resources and require significant management and research and development attention that would otherwise be available for development of our existing platform and products.* Moreover, the anticipated benefits of any acquisition, investment or business relationship may not be realized, we may be exposed to unknown risks or liabilities.

30.    The above statements identified in ¶¶ 20-29 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose to investors: (1) the Company's sales and revenue growth were not indicative of the Company's growth as it transitioned to an enterprise sales cycle; (2) that the Company faced integration challenges with its acquisition of Tagger; (3) as a result, the Company was "self inducing sales headwinds;" (4) as a result, the Company would revise fiscal year 2024 revenue guidance; and (5) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

31.    On May 2, 2024, after the markets closed, Sprout Social announced the Company's operating results for the first fiscal quarter of 2024, disclosing that the Company had missed its revenue guidance for the quarter and issuing a $20 million downward revision for the Company's fiscal 2024 results (the "1Q23 Press Release"). The 1Q23 Press Release quoted CFO Del Preto who stated the Company had *"underestimated the magnitude of enterprise seasonality"* and that it had also *"self-induc[ed] sales execution headwinds."* On the same date, the Company held an earnings call held pursuant to these results (the "1Q23 Earnings Call"). During the 1Q23 Earnings

Call Barretto disclosed that the Company "made several important strategic decisions heading into Q1" which the Company "*thought [it] could manage [] without disruption, but they collectively set us back.*" Barretto stated "the decisions on all of this happened in Q4 and the execution of it happened in Q1." Barretto further disclosed the Company's shift in business had "changed materially" and "affect[ed] revenue recognition and planning" which would now be "heavily weighted to traditional enterprise buying cycles." Howard also disclosed that the Company had to spend "energy and calorie" in the first quarter on "tactical decisions" including "*spending time with the team on Tagger enablement*." Barretto also disclosed that "[f]rom a sales team perspective, the maturity of the sales team, *we did a lot of enablement in Q1 across our entire customer-facing or to make sure that we are up to speed with all of the elements of influencer and our Tagger platform*."

32.     The 1Q23 Press Release stated in relevant part:

"*We underestimated the magnitude of enterprise seasonality that now comes with our business mix, while also self-inducing sales execution headwinds during Q1*

\*     \*     \*

For the full year 2024, the Company currently expects:

● **Total revenue lowered to be between $405.0 million and $406.0 million**. This assumes >20% organic Sprout revenue growth and accelerated Tagger subscription revenue growth.

33.     During the 1Q23 Earnings Call, Defendant Barretto stated the following, in relevant part, concerning the Company's revenue cycle shift:

After a record back half of 2023, where the majority of our focus was deeply weighted on closing deals versus creating new pipeline, we walked into 2024 with a different business*. We're now enterprise-heavy and the linearity of our business has changed materially, which affects our revenue recognition and planning*.

*Our months, quarters and years are now more heavily weighted to traditional enterprise buying cycles. We underestimated the magnitude of this shift and the quickly changing dynamics in our customer mix. On top of this, we made several*

11

*important strategic decisions heading into Q1,* such as building new vertical sales teams, accelerating promotions in our midmarket and enterprise teams, adjusting our account coverage model and *prioritizing Tagger enablement for all of our customer-facing teams*.

*We thought we could manage these changes without disruption, but they collectively set us back*.

34.    During the 1Q23 Earnings Call, Defendant Howard discussed the Company's "tactical decisions" including having to "spend time with the team on Tagger" to "make sure we are all up to speed" with the platform:

We're talking about some pretty *tactical decisions around account coverage, spending time with the team on Tagger enablement and things like this*.

So rather than a large kind of strategic change or going after a different part of the market or something like that, these are some tactical things that from a time, energy and calorie spent in Q1 perspective, created some headwind for us.

*    *    *

*From a sales team perspective, the maturity of the sales team, we did a lot of enablement in Q1 across our entire customer-facing or to make sure that we are up to speed with all of the elements of influencer and our Tagger platform*.

35.    On this news, Sprout Social's stock price fell $19.33, or 40.1%, to close at $28.82 per share on May 3, 2024, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

36.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Sprout Social securities between November 2, 2023 and May 2, 2024 inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Sprout Social's shares actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Sprout Social shares were traded publicly during the Class Period on the NASDAQ.  Record owners and other members of the Class may be identified from records maintained by Sprout Social or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

38.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

39.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

40.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Sprout Social; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

41.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

42.    The market for Sprout Social's securities was open, well-developed and efficient at all relevant times. As a result of these materially false and/or misleading statements, and/or failures to disclose, Sprout Social's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Sprout Social's securities relying upon the integrity of the market price of the Company's securities and market information relating to Sprout Social, and have been damaged thereby.

43.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Sprout Social's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading. The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Sprout Social's business, operations, and prospects as alleged herein.

44.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class. As described herein, during the

14

Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sprout Social's financial well-being and prospects. These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

45. Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

46. During the Class Period, Plaintiff and the Class purchased Sprout Social's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

47. As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Sprout Social, their control over,

and/or receipt and/or modification of Sprout Social's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Sprout Social, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

48.     The market for Sprout Social's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Sprout Social's securities traded at artificially inflated prices during the Class Period. On January 29, 2024 the Company's share price closed at a Class Period high of $66.14 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Sprout Social's securities and market information relating to Sprout Social, and have been damaged thereby.

49.     During the Class Period, the artificial inflation of Sprout Social's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Sprout Social's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Sprout Social and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

50.     At all relevant times, the market for Sprout Social's securities was an efficient market for the following reasons, among others:

(a)     Sprout Social shares met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Sprout Social filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Sprout Social regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Sprout Social was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

51.     As a result of the foregoing, the market for Sprout Social's securities promptly digested current information regarding Sprout Social from all publicly available sources and reflected such information in Sprout Social's share price. Under these circumstances, all purchasers of Sprout Social's securities during the Class Period suffered similar injury through their purchase of Sprout Social's securities at artificially inflated prices and a presumption of reliance applies.

52.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements

and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

53. The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Sprout Social who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

54.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

55.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Sprout Social's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

56.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Sprout Social's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

57.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Sprout Social's financial well-being and prospects, as specified herein.

58.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Sprout Social's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Sprout Social and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

59.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

60.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Sprout Social's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

61.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Sprout Social's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Sprout Social's securities during the Class Period at artificially high prices and were damaged thereby.

62.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems

that Sprout Social was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Sprout Social securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

63.     By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

65.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

66.     Individual Defendants acted as controlling persons of Sprout Social within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were

issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

67.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

68.     As set forth above, Sprout Social and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:   May 13, 2024

*s/Marvin A. Miller*

Marvin A. Miller
Lori A. Fanning
**MILLER LAW LLC**
53 w. Jackson Blvd., Suite 1320
Chicago, IL  60601
Telephone: (312) 332-3400
Email: mmiller@millerlaw.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        clinehan@glancylaw.com

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
Email: cholzer@holzerlaw.com

*Counsel for Plaintiff Richard Munch*