**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| RICHARD MUNCH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SPROUT SOCIAL, INC., JUSTYN HOWARD, RYAN BARRETTO, and JOE DEL PRETO,<br><br>Defendants. | Case No. 1:24-cv-03867-LCJ |
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPROUT SOCIAL, INC., JUSTYN HOWARD, RYAN BARRETTO, and JOE DEL PRETO,<br><br>Defendants. | Case No. 1:24-cv-05582 |

**RICHARD MUNCH'S RESPONSE IN OPPOSITION TO THE COMPETING MOTIONS
FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF COUNSEL**

## **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................................ 1

II.    THE COURT SHOULD USE THE SHORTER *MUNCH* ACTION CLASS PERIOD TO SELECT A LEAD PLAINTIFF ..................................................................................... 3

III.   MUNCH IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF UNDER THE PROPER *MUNCH* ACTION CLASS PERIOD ................................................................. 6

IV.   THE PRESUMPTION THAT MUNCH IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED .............................................................................................. 7

V.    MUNCH'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................... 8

VI.   CONCLUSION.............................................................................................................. 8

# TABLE OF AUTHORITIES

<u>CASES</u>

*Arkansas Tchr. Ret. Sys. v. Insulet Corp.*,
    177 F. Supp. 3d 618 (D. Mass. 2016) ................................................................................... 5

*Born v. Quad/Graphics, Inc.*,
    No. 19-cv-10376, 2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ............................................. 4, 7

*City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*,
    No. 23-cv-1769, 2023 WL 6458930 (S.D.N.Y. Oct. 4, 2023) .................................................. 7

*Colwell v. Exicure Inc.*,
    No. 21-cv-06637, 2023 WL 2572454 (N.D. Ill. Mar. 20, 2023) ............................................... 6

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
    No. 22-cv-368, 2021 WL 913934 (D. Utah Mar. 10, 2021) ...................................................... 5

*In re Bausch & Lomb Inc. Sec. Litig.*,
    244 F.R.D. 169 (W.D.N.Y. 2007) ............................................................................................. 7

*Villare v. ABIOMED, Inc.*,
    No. 19-cv-7319, 2020 WL 3497285 (S.D.N.Y. June 29, 2020) ........................................... 3, 5

<u>STATUTES</u>

15 U.S.C. § 78u-4(a)(3)(B) .................................................................................................... *passim*

<u>RULES</u>

Fed. R. Civ. P. 23 ................................................................................................................ 1, 6

ii

Plaintiff Richard Munch ("Munch") submits this memorandum of law in response to the two competing motions for appointment as lead plaintiff and approval of lead counsel filed by other putative class members (Dkt. Nos. 13, 15), and in support of his motion to consolidate the related actions, to appoint Munch as lead plaintiff, and to approve Munch's selection of counsel (Dkt. No. 10).[1] Munch's motion should be granted and the competing motions should be denied because Munch has the largest financial interest under the shorter, correct, class period alleged in the action he first filed: *Munch v. Sprout Social, Inc.*, No. 1:24-cv-03867-LCJ (the "*Munch Action*").[2]

## I.      PRELIMINARY STATEMENT

Three movants filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"): Munch (Dkt. No. 10); Michigan Laborers' Pension Fund, City of Warren Police and Fire Retirement System, and Health Benefits Plan VEBA Trust (the "Michigan Pension Funds") (Dkt. No. 13); and the Employees' Retirement System of the City of Baltimore ("Baltimore Employees") (Dkt. No. 15).

The PSLRA directs the Court to appoint the "most adequate plaintiff" as lead plaintiff, and provides a rebuttable presumption that the most adequate plaintiff is the plaintiff or movant with the "largest financial interest in the relief sought by the class" who otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure (hereinafter "Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only by a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the

---

[1] All movants support consolidation. As such, only appointment of lead plaintiff and approval of lead counsel are addressed herein.

[2] "Dkt. No. __" reference herein are to the *Munch* Action docket unless otherwise noted.

class" or "is subject to unique defenses." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

While the Michigan Pension Funds and Baltimore Employees claim larger losses than Munch in their motion papers, their losses are drastically inflated because they calculated their losses using the class period alleged in the second-filed case: *City of Hollywood Police Officers' Retirement System v. Sprout Social, Inc.*, 1:24-cv-05582 (the "*Hollywood Police* Action"). The original class period alleged in the *Munch* Action is 6 months long and ends May 2, 2024, when Defendants disclosed that representations they had made in the fourth quarter of 2023 and the first quarter of 2024 were misleading. However, just 10 days before lead plaintiff motions were due in the *Munch* Action, counsel for Baltimore Employees filed the *Hollywood Police* Action, purporting to expand the class period an additional *2 years* into the past—seemingly because Baltimore Employees does not have a loss in the *Munch* Action class period. However, the expansion is not supported by the alleged facts. And courts reject class period expansions that, like here, are the product of gamesmanship. As such, this Court should apply the *Munch* Action class period to determine which movant to appoint as lead plaintiff.

Under the proper *Munch* Action class period, Munch has, by far, the largest financial interest as measured by the movants' last in, first out ("LIFO") losses:

| Movant | LIFO Loss |
|---|---|
| Richard Munch | $22,101 |
| Michigan Pension Funds | $8,231 |
| Baltimore Employees | $0 |

Since Munch is also typical of other class members, and adequate to represent the class, Munch is the presumptively "most adequate plaintiff" to be appointed as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii). As such, Munch should be appointed as lead plaintiff, and his selection of counsel should be approved.

2

II. **THE COURT SHOULD USE THE SHORTER *MUNCH* ACTION CLASS PERIOD TO SELECT A LEAD PLAINTIFF**

While courts typically evaluate lead plaintiff candidates using the longest alleged class period, courts will set aside the longer class period when "there is a risk that the longer class period is a product of gamesmanship." *Villare v. ABIOMED, Inc.*, No. 19-cv-7319, 2020 WL 3497285, at *5 (S.D.N.Y. June 29, 2020). That is exactly the case here. On May 13, 2024, Munch filed the original complaint in this action, alleging an appropriate 6-month class period spanning November 2, 2023, to May 2, 2024. *See Munch* Action, Dkt. No. 1 ("*Munch* Complaint"), ¶ 1. On July 2, 2024, the law firm Saxena White P.A. ("Saxena White") filed a related action on behalf of the City of Hollywood Police Officers' Retirement System ("Hollywood Police"), purporting to expand the class period into the past an additional ***2 years***, alleging claims on behalf of investors that purchased securities between November 3, ***2021*** and May 2, 2024. *See Hollywood Police* Action, Dkt. No. 1 ("*Hollywood Police* Complaint"), ¶ 1. Just 10 days later, on July 12, 2024, Saxena White filed a lead plaintiff motion on behalf of a different client: Baltimore Employees. *See* Dkt. No. 15. Notably, Baltimore Employees has a loss ***only*** under the *Hollywood Police* Action class period, but not the *Munch* Action class period. Filing an action on behalf of one client shortly before the lead plaintiff deadline to expand the class period by 2 years for a different client is certainly gamesmanship and, thus, should be rejected.

The 6-month *Munch* Action class period is well-supported by the facts, but the 2.5-year *Hollywood Police* Action class period is not. Both actions end their class periods on May 2, 2024, and allege a corrective disclosure on that day. The May 2, 2024 corrective disclosure relates to false and misleading statements Defendants made about Sprout Social's operations in the fourth quarter of 2023 and the first quarter of 2024, including problems with Sprout Social's integration of recent acquisition Tagger Media, Inc. ("Tagger"). *See Munch* Complaint, ¶ 31. Specifically, on

3

May 2, 2024, Defendants disclosed that Sprout Social "missed its revenue guidance" for the first quarter of 2024, in part because it was forced to make "several important strategic decisions" in the fourth quarter of 2023 that were executed in the first quarter of 2024, "such as building new vertical sales teams, accelerating promotions in our midmarket and enterprise teams, adjusting our account coverage model and prioritizing Tagger enablement for all of our customer-facing teams" which "set us back." *See Munch* Complaint, ¶¶ 31, 33. Defendants also disclosed that Sprout Social was negatively impacted because it had to expend additional resources with the team at Tagger to get them "up to speed." *Id.* ¶ 34. The *Hollywood Police* Complaint alleges the same disclosure relating to the same events. *See Hollywood Police* Complaint, ¶¶ 62-70. Consistent with these corrective disclosures, the *Munch* Action alleges a class period that begins in the fourth quarter of 2023 when the "strategic decisions" at issue were made (but were not disclosed). *See Munch* Complaint, ¶ 20 (starting the class period on November 2, 2023). This is the appropriate start for the class period.

In contrast, the *Hollywood Police* Action class period, which starts 2 years prior, is not justified by these facts. The *Hollywood Police* Action class period starts on November 2, 2021 when the Sprout Social announced its third quarter 2021 financial results. *See Hollywood Police* Complaint, ¶¶ 29-31. On that day, Sprout Social generally touted its successes during the quarter, and Sprout Social's president is quoted reassuring an analyst that Sprout Social is marketing itself to new customers. *Id.* Successes in November 2021 cannot possibly relate to the undisclosed "strategic decisions" Sprout Social made in the fourth quarter of 2023, especially because Tagger was not even acquired yet. The *Hollywood Police* Action class period is not supported by the facts and should be rejected. *See Born v. Quad/Graphics, Inc.*, No. 19-cv-10376, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020) (using the shorter class period, reasoning "the shorter class period is,

on its face, as plausible, if not more plausible, than the longer class period"); *see also Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 22-cv-368, 2021 WL 913934, at *3 (D. Utah Mar. 10, 2021) (using the shorter period, reasoning the movant pushing the longer period "failed to support its proposed class period with any sufficient allegations of fact"); *Arkansas Tchr. Ret. Sys. v. Insulet Corp.*, 177 F. Supp. 3d 618, 624 (D. Mass. 2016) (using the shorter class period where the movant pushing for the longer period "has not explained, let alone proven, how the earlier statements . . . caused additional losses to any class members"); *Villare*, 2020 WL 3497285, at *5 (rejecting the longer class period because it is "implausible and frivolous").

Since there is evidently no connection between the May 2, 2024 corrective disclosure and Sprout Social's third quarter 2021 results at the start of the *Hollywood Police* Action class period, counsel for Hollywood Police and Baltimore Employees, Saxena White, added a second intra-class period corrective disclosure to justify the expansion. This, too, should be rejected as baseless. Specifically, the *Hollywood Police* Complaint alleges that Sprout Social's announcement on August 3, 2023 that it was acquiring Tagger was, itself, an additional corrective disclosure. *See Hollywood Police* Complaint, ¶¶ 48-50. According to the allegations in the *Hollywood Police* Complaint, Sprout Social's acquisition of Tagger added influencer marketing to Sprout Social's products, which nearly half of Sprout Social's potential customers were demanding. *Id.* However, there are a few fundamental problems with this. First, the *Hollywood Police* Complaint does not contain a single allegation that Sprout Social had previously misrepresented the demand for Sprout Social's ability to deliver influencer marketing tools to its customers. Second, even if Sprout Social had misrepresented its ability to service influencer marketing, that issue is separate from the strategic decisions disclosed in Sprout Social's May 2, 2024 corrective disclosure. Third, the proposed August 3, 2023 corrective disclosure occurred ***before*** the start of the *Munch* Action class

5

period. As such, the proposed August 3, 2023 corrective disclosure is disconnected from the well-pled allegations in the *Munch* Action both temporally and substantively. Again, the class period expansion is not supported by the facts and should be rejected.

The *Munch* Action class period is the correct class period and should govern the appointment of lead plaintiff.

### III. MUNCH IS THE PRESUMPTIVELY MOST ADEQUATE PLAINTIFF UNDER THE PROPER *MUNCH* ACTION CLASS PERIOD

Munch satisfies all three requirements to be the presumptively most adequate plaintiff since he filed the initial complaint and a timely motion, satisfies the relevant requirements of Rule 23, and as explained *infra*, has the largest financial interest in the relief sought by the class under the *Munch* Action class period. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

While the PSLRA does not specify a means of calculating the "largest financial interest" among movants, most courts typically consider: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *See Colwell v. Exicure Inc.*, No. 21-cv-06637, 2023 WL 2572454, at *2-3 (N.D. Ill. Mar. 20, 2023). "Courts in this District frequently consider the approximate losses suffered to be the most important of the four factors." *Id.* To calculate loss, the LIFO loss calculation is the preferred method. *Id.* *5 n.4.

Here, under the *Munch* Action class period, Munch has the largest financial interest as measured by every factor:

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Expenditure | LIFO Loss |
|---|---|---|---|---|
| Richard Munch | 727 | 727 | $45,821 | $22,101 |
| Michigan Pension Funds | 464 | 464 | $22,179 | $8,231 |
| Baltimore Employees | 0 | -1,552 | -$96,991 | $0 |

As such, Munch has the largest financial interest. Since Munch also filed the complaint and a

6

timely motion, and satisfies the requirements of Rule 23, he is the presumptively most adequate plaintiff to be appointed as lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Notably, Baltimore Employees does not have a loss at all. Indeed, Baltimore Employees sold more shares than it purchased and received more in proceeds than it expended during the class period. Courts routinely disqualify such "net sellers" and "net gainers" from consideration for appointment as lead plaintiff since they actually benefited from the fraud at issue. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices.") (collecting cases nationwide); *see also City of Omaha Police & Firefighters Ret. Sys. v. Cognyte Software Ltd.*, No. 23-cv-1769, 2023 WL 6458930, at *6 (S.D.N.Y. Oct. 4, 2023) ("Clal's status as a 'net seller' and 'net gainer' during the Class Period subjects it to unique defenses that prevent Clal from adequately representing the class."). In fact, similar to the situation here, the court in *Born* disqualified a movant that had a loss under the longer class period in part because the movant was also "a 'net seller' and 'net gainer' during the [shorter] class period." *See Born*, 2020 WL 994427, at *2.

\* \* \*

Munch is the presumptively most adequate plaintiff to be appointed as lead plaintiff under the proper *Munch* Action class period.

## IV. THE PRESUMPTION THAT MUNCH IS THE MOST ADEQUATE PLAINTIFF HAS NOT BEEN REBUTTED

The lead plaintiff presumption may be rebutted only upon "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses that render such plaintiff incapable of adequately representing the

7

class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). No other movants can prove that Munch is inadequate. Indeed, Munch is a sophisticated individual that filed the original complaint in this action, manages his own investment portfolio, and owns a car dealership. *See* Dkt. No. 11 at 12. As such, Munch should be appointed as lead plaintiff.

**V.      MUNCH'S SELECTION OF COUNSEL SHOULD BE APPROVED**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). Munch selected Glancy Prongay & Murray LLP and Holzer & Holzer, LLC as Co-Lead Counsel and Miller Law LLC as Liaison Counsel. The firms collectively have decades of experience successfully representing injured investors. *See* Dkt. Nos. 10-3, 10-4, 10-5. By approving Munch's selection of counsel, the Court will ensure that the class will receive the highest caliber of legal representation. Accordingly, Munch's selection of lead counsel for the class should be approved.

**VI.     CONCLUSION**

For the foregoing reasons, Munch respectfully requests that the Court grant his motion and enter an order: (1) consolidating the Related Actions; (2) appointing Munch as Lead Plaintiff; (3) approving Munch's selection of Glancy Prongay & Murray LLP and Holzer & Holzer, LLC as Co-Lead Counsel and Miller Law LLC as Liaison Counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

Dated: August 7, 2024                                    Respectfully submitted,

By:  s/ *Lori A. Fanning*

Lori A. Fanning
Marvin A. Miller
**MILLER LAW LLC**
53 W. Jackson Blvd., Suite 1320
Chicago, IL 60604
Telephone: (312) 332-3400

8

lfanning@millerlawllc.com
mmiller@millerlawllc.com

*Counsel for Richard Munch and Proposed Liaison Counsel for the Class*

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

**HOLZER & HOLZER, LLC**
Corey D. Holzer
211 Perimeter Center Parkway, Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029

*Counsel for Richard Munch and Proposed Co-Lead Counsel for the Class*

9