IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD MUNCH, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 24-cv-3867 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| SPROUT SOCIAL, INC., JUSTYN HOWARD, RYAN BARRETTO and JOE DEL PRETO | ) ) ) ) | |
| Defendants. | ) ) | |
| CITY OF HOLLYWOOD POLICE OFFICERS' RETIREMENT SYSTEM, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | No. 24-cv-5582 |
| v. | ) ) ) | Judge Jeffrey I. Cummings |
| SPROUT SOCIAL, INC., JUSTYN HOWARD, RYAN BARRETTO and JOE DEL PRETO | ) ) ) ) | Consolidated Cases |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

On May 13, 2024, plaintiff Richard Munch filed a federal securities class action alleging that defendant Sprout Social, Inc., and certain of its executives, defendants Justyn Howard, Ryan Baretto, and Joe Del Preto, made false and misleading statements regarding Sprout Social's business operations and future prospects. (Case No. 24-cv-3867 ("*Munch*"), Dckt. #1). On July 2, 2024, plaintiff City of Hollywood Police Officers' Retirement System filed a separate securities class action suit against the same defendants alleging that they engaged in a

substantially similar unlawful and/or fraudulent scheme. (Case No. 24-cv-5582 ("*Hollywood*"), Dckt. #1). By order dated July 17, 2024, the *Hollywood* action was consolidated with the *Munch* action and the consolidated cases were reassigned to this Court. *Munch* (Dckt. ##19, 20).

Now pending before the Court are the respective motions by plaintiff Munch, and by two proposed class members (the Michigan Laborers' Pension Fund and City of Warren Police and Fire Retirement System and Health Benefits Plan VEBA Trust (the "Michigan Fund"), and the Employees' Retirement System of the City of Baltimore (the "Baltimore Employees")), for appointment as lead plaintiff and approval of counsel. *Munch* (Dckt. ##10, 13, 15). For the reasons stated below, the Court appoints the Baltimore Employees as the lead plaintiff and approves its selection of the law firm of Saxena White, P.A. as lead counsel and the law firm of Cohen Milstein Sellers & Toll, PLLC as liaison counsel.

I.  **BACKGROUND**

Defendant Sprout Social is a software company that offers a centralized platform for businesses to manage social media marketing and operations. *Munch* (Dckt. #1 (hereinafter the "Munch Compl.") ¶2); *Hollywood* (Dckt. #1 (hereinafter the "Hollywood Compl.") ¶2)). The company generates revenue primarily from subscriptions to its social media management platform under a software-as-a-service model. (Munch Compl. ¶2).

After the close of the markets on November 2, 2021, Sprout Social issued a press release highlighting, among other things, that revenue was up by 46% compared to the same period in 2020. (Hollywood Compl. ¶29). Plaintiffs allege that on an earnings call the same day, defendants touted the company's "ongoing momentum" as Sprout Social transitioned to larger customers that would sign annual contracts. (*Id.* at ¶¶4, 29). Defendants further highlighted Sprout Social's "unique go-to-market strategy" and that "execution from the sales organization

has been really strong." (*Id.* at ¶¶4, 30). Plaintiffs allege that, unbeknownst to investors, Sprout Social did not have the structural ability to sell its software to enterprise customers and thus could not execute on its purported go-to-market strategies for enterprise customers. (*Id.* at ¶6).

On August 3, 2023, Sprout Social announced that it had acquired Tagger Media, Inc. ("Tagger"), a leading influencer marketing and social intelligence platform used by enterprise customers, for $140 million. (Hollywood Compl. ¶7, Munch Compl. ¶3). Three months later, on November 2, 2023, Sprout Social issued a press release, which stated, in relevant part:

> "Our focused investments are delivering strong returns," said Joe Del Preto, [Chief Financial Officer]. "Our current performance and leading indicators performed well during Q3 led by the rapidly changing mix of our business and further acceleration in our enterprise segment. Tagger overperformed our expectations right out of the gate.

(Munch Compl. ¶20). Plaintiffs allege that during an earnings call the same day, defendant Howard highlighted the company's integration of Tagger, stating "[b]usiness integration has also progressed smoothly and early customer reception to [T]agger has far exceeded our expectations." (*Id.* at ¶21).

Six months after it issued the November 2023 press release, Sprout Social issued another press release, dated May 2, 2024, announcing a $20 million downward revision to the company's revenue guidance. (*Id.* at ¶31, Hollywood Compl. ¶11). The press release noted that the Sprout Social had been "self-inducing sales execution headwinds." (*Id.*).

Plaintiff Richard Munch filed an initial class action complaint on May 13, 2024 on behalf of a class comprising purchasers of Sprout Social securities between November 2, 2023 and May 2, 2024. (Munch Compl. ¶1). The *Munch* complaint ties the start of the alleged class period to the company's November 2, 2023 press release and Howard's favorable statements about Tagger on the earnings call that same day. (Munch Compl. ¶20).

3

A subsequent complaint was filed on July 2, 2024 by plaintiff the City of Hollywood Police Officers' Retirement System on behalf of a class of persons who acquired Sprout Social securities between November 3, 2021 and May 2, 2024. The *Hollywood* complaint pegs the start date of the class period to defendants' statements on the November 3, 2021 earnings call regarding the company's "ongoing momentum" and "unique go-to-market strategy." (Hollywood Compl. ¶¶29, 30).

Munch and Hollywood bring their suits against Sprout Social and certain of its executive officers for alleged violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b) and 78t(a), and U.S. Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R §240.10b-5.

The Baltimore Employees—a public pension fund that provides retirement benefits to approximately 18,000 beneficiaries and oversees approximately $2 billion in assets on their behalf—purchased 22,946 shares of stock in Sprout Social between December 6, 2021 and February 27, 2024. *Munch* (Dckt. ##16 at 15-16; 17-2 at 2). The Michigan Fund—which is comprised of defined benefits plans which individually have at least $450,000 million in assets under management and, collectively, over $1 billion in assets under management—purchased 13,836 shares of stock in Sprout Social between December 22, 2022 and November 13, 2023. *Munch* (Dckt. ##13-4 at 2; 13-3 at 2). Munch purchased 727 shares in Sprout Social between December 29, 2023 and January 25, 2024. *Munch* (Dckt. #10-2 at 2).

II.     LEGAL STANDARD

The Private Securities Litigation Reform Act ("PSLRA") sets forth the procedures that govern securities class actions. Pursuant to the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be  most

capable of adequately representing the interests of class members." 15 U.S.C. §78u-4(a)(3)(B)(i) (cleaned up). Both the selection of a lead plaintiff and the approval of the lead plaintiff's choice of counsel is committed to the court's discretion as guided by the procedures set forth in the PSLRA. *See, e.g., Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 131 (D.Del. 2011) (citing cases).

Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff to serve as lead plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a timely motion in response to a notice under subparagraph (A)(i);
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The relevant Rule 23 criteria are typicality and adequacy: namely, that the claims and defenses of the lead plaintiff must be "typical of the claims or defenses of the class," and applicants must provide a basis to conclude that they "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4). This presumption may be rebutted only by proof that the presumptive lead plaintiff: (1) will not fairly and adequately protect the interests of the class; or (2) is subject to unique defenses that render such plaintiff incapable of inadequately representing the class. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa)–(bb).

When selecting a lead plaintiff, the Court also consider that "the PSLRA's legislative history expressly states that Congress anticipated and intended that [large institutional] investors would serve as lead plaintiffs," in part because "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than

class members with small amounts at stake." *In re Cendant Corp. Litigation*, 264 F.3d 201, 244, 264 (3d Cir. 2001) (cleaned up); *Grobler v. Inotiv, Inc.*, 4:22-CV-045-PPS-JEM, 2022 WL 4181295, at *3 (N.D.Ind. Sept. 12, 2022) ("[t]he PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.") (cleaned up); *In re Motorola*, No. 03 C 287, 2003 WL 21673928, at *3 (N.D.Ill. July 16, 2003) (Congress believes that the PSLRA's goal of preventing "lawyer driven" litigation would "best be achieved by encouraging institutional investors to serve as lead plaintiffs.").

I.   DISCUSSION

A.  Each Movant Timely Moved for Appointment as Lead Plaintiff

Pursuant to the PSLRA, a plaintiff who files a securities litigation class action must provide notice to class members via publication in a widely circulated national business-oriented publication or wire service within twenty days of filing the complaint. 15 U.S.C. §78u-4(a)(3)(A)(I). The notice must: (1) advise class members of the pendency of the action, the claims asserted therein, and the purported class period; and (2) inform potential class members that, within sixty days of the date on which the notice was published, any members of the purported class may move the court to serve as lead plaintiff of the purported class. 15 U.S.C. §78u-4(a)(3)(A)(i)(I)–(II). Munch provided the requisite notice in the *Munch* action—the first of the two consolidated securities class actions—within twenty days of filing his lawsuit, and any member of the proposed class had the right to apply for appointment of lead plaintiff within sixty days of the publication of the *Munch* notice. 15 U.S.C. §78u-4(a)(3)(A). The three movants thereafter timely filed their motions to serve as lead plaintiff. *Munch* (Dckt. No. ##10, 13, 15).

### B. The Baltimore Employees Has the Largest Financial Interest in the Relief Sought by the Putative Class

The Court next turns to the question of which of the movants has the largest financial interest in the relief sought by the putative class. In conducing this assessment, courts generally rely upon four factors: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Lax v. First Merchants Acceptance Corp.*, No. 97-cv-2715, 1997 WL 461036, at *5 (N.D.Ill. Aug. 11, 1997). Although courts differ on the precise weight to apply to each factor, most courts agree that the approximate losses suffered is the most salient factor in assessing the lead plaintiff. *City of Sterling Heights Gen. Employees' Ret. Sys. v. Hospira, Inc.*, No. 11 C 8332, 2012 WL 1339678, at *4 (N.D.Ill. Apr. 18, 2012) ("In giving weight to the four factors, courts in this District, as others, 'place the most emphasis on the last of the four factors: the approximate losses suffered by the movant' above any weight accorded to net shares purchased and net expenditures.") (cleaned up).

Before the Court can determine each movant's relevant financial interest in the relief sought by the putative class, it must first decide the appropriate class period to use in its assessment. *See e.g.*, *In re Boeing Co. Aircraft Sec. Litig.*, No. 19 CV 2394, 2019 WL 6052399, at *2 (N.D.Ill. Nov. 15, 2019). Here, both Munch and the Baltimore Employees assert that they have sustained the largest financial loss. The answer as to which of these movants is correct turns on whether the Court considers the class period sought in the *Hollywood* action (which runs between November 3, 2021 and May 2, 2024) or the considerably shorter class period sought in the *Munch* action (which runs between November 2, 2023 and May 2, 2024). The movants agree

7

that they each suffered the following losses as measured by the "last in, first out" (or "LIFO") methodology¹ during the respective class periods:

|  | Loss in the *Hollywood* class period (November 3, 2021 – May 2, 2024) | Loss in the *Munch* class period (November 2, 2023 – May 2, 2024) |
|---|---|---|
| Munch | $22,101 | $22,101 |
| Michigan Fund | $370,216 | $8,230 |
| Baltimore Employees | $598,743 | $0 |

*Munch* (Dckt. #22 at 3). Thus, the Baltimore Employees has the largest financial loss if the longer class period pled in *Hollywood* is used whereas Munch has the largest financial loss if the shorter class period pled in his complaint is adopted.

### 1. The Court Applies the *Hollywood* Class Period for Purposes of Determining the Movant with the Largest Financial Interest

"Where there are two potential class periods, courts addressing lead plaintiff motions generally apply the longer class period." *Ragan v. AppHarvest, Inc.*, No. 21-CV-7985 (LJL), 2021 WL 5909116, at *7 (S.D.N.Y. Dec. 3, 2021) (cleaned up). "The logic is that the longer class period encompasses more potential class members and damages." *Id.* (cleaned up); *Villare v. ABIOMED, Inc.*, No. 19 CIV. 7319 (ER), 2020 WL 3497285, at *4 (S.D.N.Y. June 29, 2020) (same); *Boeing*, 2019 WL 6052399, at *3 (same, collecting cases). "The court, of course, 'should not make any binding determinations regarding the proper class period as part of the

---

¹ LIFO "calculates loss by assuming that the stocks purchased most recently were sold first." *In re CMED Sec. Litig.*, No. 11 CIV. 9297 KBF, 2012 WL 1118302, at *3 (S.D.N.Y. Apr. 2, 2012). Courts generally prefer the LIFO methodology for determining loss due to securities fraud because it "takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005).

lead-plaintiff analysis.'" *Ragan*, 2021 WL 5909116, at *7, *quoting In re BP, PLC Sec. Litig.*, 758 F.Supp.2d 428, 434 (S.D.Tex. 2010).

Nonetheless, courts have cautioned that "blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Villare*, 2020 WL 3497285, at *4 (cleaned up). When identifying the proper class period in connection with determining the proposed lead plaintiffs' financial interest, courts have looked to whether the allegations in favor of the longer class period are obviously frivolous or implausible. *Id.* at *4–5 (citing *In re Centerline Holding Co. Sec. Litig.*, No. 08-cv-505 (SAS), 2008 WL 1959799, at *3–4 (S.D.N.Y. May 5, 2008) (applying the *Twombly* standard of "plausibility") and *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D.Wis. 2009) (adopting "obviously frivolous" test at the lead plaintiff stage)).

Neither Munch nor the Michigan Fund contend that the allegations in the *Hollywood* complaint in favor of the longer class period are "obviously frivolous" to the extent that those allegations concern that two-year timeframe predating the *Munch* class period. Nor could they. The *Hollywood* complaint alleges that defendants made materially false misrepresentations and/or misleading statements starting on November 3, 2021 that caused Sprout Social's stock price to trade at artificially inflated prices during the class period. (Hollywood Compl., ¶¶61, 77). These allegations are not "obviously frivolous."

Instead, Munch and the Michigan Fund seemingly assert that the allegations in favor of the longer class period in the *Hollywood* complaint are implausible. The Michigan Fund's sole argument is that the allegations of wrongdoing are *strongest* during the *Munch* class period. (Dckt. #22 at 2). While the Michigan Fund could conceivably be correct, it does not point to,

9

and the Court is not aware of, any authority which suggests that the presence of "stronger" allegations in the *Munch* complaint renders the allegations in the *Hollywood* complaint that predate the *Munch* class period implausible.

Munch asserts "implausibility" because there is "no connection" between the May 2, 2024 corrective disclosure—which, according to Munch, related to late-2023 and early-2024 statements about Sprout Social's integration of Tagger—and Sprout Social's third quarter 2021 results. (Dckt. #21 at 5). Munch's suggested reading of the allegations is too narrow as the *Hollywood* complaint sets forth plausible allegations which lead from the materially false misrepresentations to harm.

Specifically, the *Hollywood* complaint alleges that throughout the *Hollywood* class period, defendants touted the company's "ongoing momentum" as Sprout Social transitioned to larger enterprise clients that would sign annual contracts, highlighted the company's "unique go-to-market" strategy, and claimed that "execution from the sales organization had been really strong." (Hollywood Compl. ¶¶4, 29–30). The *Hollywood* complaint further alleges that defendants made false and/or misleading statements and/or failed to disclose that Sprout Social did not have the ability to sell its software to enterprise customers; did not execute on its purported "go-to-market" strategies, and that the company was experiencing longer sales cycles, poor pipeline generation, and self-induced headwinds. (*Id.* at ¶¶6, 61, 85). The *Hollywood* complaint also alleges, like the *Munch* complaint, that defendants failed to disclose that Sprout Social faced integration issues with Tagger. (*Id.* at ¶¶55, 63, 66; Munch Compl. ¶¶6, 21, 30). Based on these alleged material misrepresentations and omissions, the *Hollywood* plaintiffs claim that they and the class have incurred substantial damage. (Hollywood Compl. ¶83).

Accordingly, the Court finds that the allegations in favor of the longer class period in the *Hollywood* complaint are sufficient to satisfy the plausibility standard.

Munch also fails to cite any persuasive case law which would lead this Court to determine that the *Hollywood* class period is not supported by the allegations in the *Hollywood* complaint. (Dckt. #21 at 4–5) (citing *Born v. Quad/Graphics Inc.*, No. 19-cv-10376, 2020 WL 994427, at *2 (S.D.N.Y. Mar. 2, 2020), *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, No. 22-cv-368, 2021 WL 913934 (D. Utah Mar. 10, 2021), *Arkansas Tchr. Ret. Sys. v. Insulet Corp.*, 177 F.Supp. 3d 618 (D. Mass. 2016), and *Villare*, 2020 WL 3497285 at *5). Furthermore, unlike in the cases cited by Munch, the *Hollywood* complaint contains plausible allegations that investors were misled as early as the beginning of the *Hollywood* class period in November 2021, identifies alleged material misstatements during the longer class period, and explains how those alleged misstatements caused additional losses. *Cf. Born*, 2020 WL 994427, at *2 (selecting shorter class period where the complaints contained no allegation that class members were misled as early as the beginning of the longer class period); *Gelt*, 2021 WL 913934, at *4 (declining to use the longer class period in determining which movant had the largest financial interest in the litigation where none of the movants identified a material misstatement made by the defendant in the longer class period); *Insulet Corp.*, 177 F.Supp.3d at 624 (applying the shorter class period where the movant urging the longer class period failed to explain how the earlier statements caused additional losses); *Villare*, 2020 WL 3497285, at *5 (rejecting the longer class period where the supporting allegations were deemed "implausible and frivolous").

Munch also urges the Court to apply the *Munch* class period because the *Hollywood* class period, according to Munch, is the product of "gamesmanship" by the Baltimore Employees' counsel. (Dckt. #21 at 3). Munch takes particular issue with the facts that counsel for the

11

plaintiff in the *Hollywood* action is also counsel for the Baltimore Employees, and that the *Hollywood* complaint (which expanded the proposed class period) was filed ten days before the sixty-day deadline to move to serve as lead plaintiff in the *Munch* action. Munch's argument is unpersuasive.

As an initial matter, it is unclear that the Court has the authority under the PSLRA to disqualify the otherwise qualified Baltimore Employees solely because of alleged lawyer gamesmanship. *See Hardy v. MabVax Therapeutics Holdings*, No. 18-CV-01160-BAS-NLS, 2018 WL 4252345, at *4 (S.D.Cal. Sept. 6, 2018) (movant "identifies no authority – statutory or otherwise – permitting the Court to 'disqualify' [another movant] from appointment as lead plaintiff pursuant to the PSLRA based on alleged lawyer gamesmanship."). Furthermore, the decision in *Villare*, upon which Munch relies, is distinguishable. In that case, the court first found (unlike here) that the allegations anchoring the longer class period were "implausible and frivolous," before concluding that there was a risk that the longer class period advocated by the movant was the product of "gamesmanship." *Villare*, 2020 WL 3497285 at *5. Moreover, the fact that the Michigan Fund, which has no connection to the alleged gamesmanship, also supports using the *Hollywood* class period (Dckt. #14 at 7)— thereby leaving Munch as the "sole outlier"—defeats Munch's allegations of "gamesmanship." *Khan v. ChargePoint Holdings, Inc.*, No. 23-CV-06172-PCP, 2024 WL 2261948, at *2 (N.D.Cal. May 16, 2024) (applying longest relevant class period to determine the most adequate plaintiff and rejecting allegations of class period manipulation, where, of the four movants, only one (the "sole outlier") suggested the shorter class period should govern).[2]

---

[2] In any event, the Court notes that Munch's push for the considerably shorter *Munch* class period is equally susceptible to accusations of gamesmanship given the modest losses that the three movants sustained during the *Munch* class period ($30,331) compared to the losses sustained by the movants during the entirety of the *Hollywood* class period ($999,290). *See Hardy*, 2018 WL 4252345, at *4–5

12

Based on the foregoing, the Court finds that the allegations in the *Hollywood* complaint are plausible, and that they connect to the alleged harm, such that—consistent with the general rule that courts usually apply the most inclusive class period—the *Hollywood* class period should be used for purposes of determining the movant with the largest financial interest in the relief sought by the class. *See MGIC Investment Corp.*, 256 F.R.D. at 624–25; *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *2 (N.D.Cal. Aug. 22, 2008) ("Though a shorter class period may simplify the litigation, no benefits accrue by shortening the class period at this stage in the litigation."). The Court reiterates that its selection of the *Hollywood* class period is not binding on the later stages of this case, and that the "the class period may change due to subsequent developments in the litigation, which inevitably may impact who is an appropriate lead plaintiff." *Hardy*, 2018 WL 4252345, at *4.

### 2. Determination of the Largest Financial Interest

With the class period defined for purposes of resolving the present motions, the Court turns to its assessment of which movant has the greatest financial interest in the relief sought by the putative class. The Court takes the movants' calculations at face value for purposes of assessing the greatest loss during the class period, as follows:

|  | **Munch** | **Michigan Fund** | **Baltimore Employees** |
|---|---|---|---|
| Claimed loss during the *Hollywood* class period | $22,101 | $370,216 | $598,743 |

---

(noting that courts generally use the most inclusive class period, and that it is unclear why a plaintiff would argue for a shorter class period at the lead plaintiff stage when doing so would have the effect of reducing the class size and potential damages unless it were in the best interest of that particular plaintiff only).

As stated above, the Baltimore Employees also purchased substantially more shares of stock in Sprout Social than both the Michigan Fund and Munch combined. (Compare 22,946 shares (Baltimore Employees) to 13,836 shares (Michigan Fund) and 727 shares (Munch)). Therefore, in consideration of the relevant factors, the Court finds that the Baltimore Employees has the greatest financial interest in this litigation and is therefore presumptively the most adequate lead plaintiff.

### C. The Baltimore Employees Otherwise Satisfies the Requirements of Rule 23 and the Presumption That It Is the Most Adequate Lead Plaintiff Has Not Been Rebutted

Once a court determines which plaintiff has the largest financial interest, generally "the court must appoint that plaintiff as lead, unless it finds that [plaintiff] does not satisfy the typicality or adequacy requirements" of Rule 23(a). *In re Cavanaugh*, 306 F.3d 726, 732, (9th Cir. 2002). "A plaintiff's claims are typical if they arise from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Mortimer v. Diplomat Pharmacy Inc.*, No. 19 C 1735, 2019 WL 3252221 (N.D.Ill. July 19, 2019*)* (cleaned up). "A lead plaintiff meets the adequacy requirement if (1) its claims are not antagonistic or in conflict with those of the class; (2) it has sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) it is represented by competent, experienced counsel who [will] be able to prosecute the litigation vigorously." *Id.* (cleaned up). The Baltimore Employees need only make a "preliminary showing" that it satisfies these Rule 23 requirements (*id.*), and the Court finds that it has done so.

The Baltimore Employees' claims are typical of the putative class. Like the purported class members, the Baltimore Employees: (1) purchased Sprout Social stock during the class period; (2) was adversely affected by defendants' allegedly false and/or misleading statements

14

and omissions; and (3) suffered damages because of those statements and omissions. In short, the Baltimore Employees' claims arise from the same alleged misconduct and are based on the same legal theory as the claims of other class members.

The Baltimore Employees also meet the adequacy requirement of Rule 23. Because the Baltimore Employees' claims arise from the same alleged misconduct as that of the putative class, it is not in conflict with the class's claims. Moreover, the Baltimore Employees' substantial stake in the outcome of the case indicates that it has the requisite incentive to vigorously represent the class's claims. Finally, the Baltimore Employees, a public pension fund that provides retirement benefits to approximately 18,000 beneficiaries and oversees approximately $2 billion in assets on their behalf, is a sophisticated institutional investor and appears well-suited to serve as a lead plaintiff in a securities class action. *In re Neopharm, Inc. Sec. Litig.*, 225 F.R.D. 563, 567 (N.D.Ill. 2004) ("Congress anticipated and intended large institutional investors to oversee securities cases.") (cleaned up); *Sokolow v. LJM Funds Mgmt., Ltd.*, No. 18-CV-01039, 2018 WL 3141814 (N.D. Ill. June 26, 2018) (finding that the PSLRA indicates a "presumption that institutional investors be appointed lead plaintiff") (cleaned up).

      **1. The Baltimore Employees Is Not Subject to a Unique Defense That Would Render It Incapable of Adequately Representing the Class**

Munch and the Michigan Fund both express concern that the Baltimore Employees will not be able to adequately represent the class because the Baltimore Employees did not incur any losses in the *Munch* class period. Thus, according to Munch and the Michigan Fund, the Baltimore Employees is subject to a unique defense that renders it incapable of adequately representing the putative class. The Court disagrees.

First, "[b]eing a lead plaintiff is not the same thing as being a class representative." *Bodri v. Gopro, Inc.*, No. 16-CV-00232-JST, 2016 WL 1718217, at *6 (N.D.Cal. Apr. 28, 2016).

15

The role of a lead plaintiff is to exercise control of the litigation as a whole, whereas the role of the named plaintiff is to represent the interests of different constituencies within the class. *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *9–11. "Nothing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action." *Hevesi v. Citigroup,* 366 F.3d 70, 82 (2nd Cir. 2004). Rather, as the Second Circuit has aptly explained, "because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi*, 366 F.3d at 82. As a result, the Baltimore Employee can be appointed as lead plaintiff even if it does not have personal standing to pursue all claims available to the putative class members. *Baker v. Cassava Scis., Inc.*, No. 24 C 977, 2024 WL 3580627, at *6 (N.D.Ill. May 29, 2024) (citing *Hevesi*, 366 F.3d at 82 n.13).

Furthermore, any concern that the Baltimore Employees will be "distracted" by its standing (or potential loss of it) is minimized by the responsibility of the lead plaintiff, "to propose [its] own withdrawal and substitution should it be discovered that [it] may no longer adequately represent the interests of the purported plaintiff class." *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. 128, 134 (S.D.N.Y. Feb. 26, 2007); *see also In re Initial Pub. Offering Sec. Litig.,* No. 21 MC 92SAS, 01 Civ. 9741, 01 Civ. 10899, 2004 WL 3015304, at *1 (S.D.N.Y. Dec. 27, 2004) (granting motion by lead plaintiff to withdraw once it was determined that he had not purchased shares during the alleged class period). Moreover, should the Baltimore Employees fail to make such a motion to withdraw if warranted, "a member of the purported class will be allowed to endeavor to protect its own interests and the interests of its fellow class members by similarly moving the court to have a lead plaintiff removed upon good cause

16

shown." *NYSE Specialists Sec. Litig.*, 240 F.R.D. at 134. Simply put, the Court has the ability to consider motions to disqualify, remove, withdraw, substitute, and add lead plaintiffs throughout the litigation of this securities class action. *Id.* at 133 (collecting cases); *Z-Seven Fund, Inc. v. Motorcar Parts & Accessories*, 231 F.3d 1215, 1218 (9th Cir. 2000) ("The district court's order designating a lead plaintiff is not a conclusive, immutable determination of the issue. It can be revisited if circumstances warrant.").

In sum: because no member of the putative class has offered any evidence to rebut the presumption that the Baltimore Employees is the most adequate plaintiff, the Court appoints the Baltimore Employees as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(iii)(II) (providing that lead-plaintiff presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff" either "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class"); *In re Motorola*, 2003 WL 21673928, at *6 (appointing presumptive lead plaintiff where competing movants failed to offer "sufficient proof" to rebut the presumption).

### D. The Court Approves the Baltimore Employees' Choice of Saxena White as Lead Counsel and Cohen Milstein as Liaison Counsel

Once the court has appointed a lead plaintiff, the lead plaintiff "shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. §78u-4(a)(3)(B)(v). Courts generally accept the appointed lead plaintiff's choice of counsel unless it appears necessary to appoint different counsel to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Indeed, as the Ninth Circuit has recognized, "the court must keep firmly in mind that the inquiry is not into the adequacy or fitness of counsel but into the

17

adequacy of plaintiff, and the choice of counsel is only an indicator – and a relatively weak one at that – of plaintiff's fitness." *In re Cavanaugh*, 306 F.3d at 733.

In this case, the Baltimore Employees have selected qualified and experienced counsel to represent the class. In particular, courts have reviewed and approved Saxena White in prior securities class actions, s*ee, e.g., Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 1:04-cv-07644 (N.D.Ill.) (Dckt. #122), and this Court agrees that "based on Saxena White's experience, it is qualified to serve as lead . . . counsel in securities law cases." *City of Hollywood Police Officers Ret. Sys. v. Henry Schein, Inc.*, No. 19-CV-5530 (FB), 2019 WL 13167890 (E.D.N.Y. Dec. 23, 2019); *see also Lang v. Tower Grp. Int'l, Ltd.*, 13 Civ. 5852(AT), 2014 WL 12779212, at *4 (S.D.N.Y. June 17, 2014). Courts have likewise appointed proposed liaison counsel Cohen Milstein as liaison counsel based on their finding that the well-credentialed and experienced firm, (*see* Dckt. #17-6), will serve as effective representation for the putative class. *See e.g.*, *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 348 (S.D.N.Y. 2009) (appointing Cohen Milstein as liaison counsel after finding that it was "qualified to litigate" a securities class action).

## CONCLUSION

For the foregoing reasons, the motion to appoint lead plaintiff and approve counsel filed by the Employees' Retirement System of the City of Baltimore (Dckt. #15; Case No. 24-cv-5582, Dckt. #12), is granted. The competing motions filed by Richard Munch, (Dckt. #10), and the Michigan Laborers' Pension Fund and City of Warren Police and Fire Retirement System and Health Benefits Plan VEBA Trust, (Dckt. #13) are denied.

**Date: November 12, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**